# MONICA PICCO ET AL. *v.* TOWN OF VOLUNTOWN ET AL.
## (SC 18375)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued December 3, 2009—officially released March 16, 2010

reserved. The trial judge shall file the decision on the motion with the appellate clerk. . . ."

142

*Beth A. Steele*, for the appellants (plaintiffs).

*Laura Pascale Zaino*, for the appellee (defendant town of Voluntown).

*Joseph M. Busher, Jr.*, for the appellee (defendant board of education of the town of Voluntown).

*Opinion*

ZARELLA, J. The dispositive issue in this appeal is whether the defendants may be held liable pursuant to General Statutes § 52-557n (a) (1) (C)[1] for damages caused by their failure to act to abate an alleged public nuisance. The plaintiffs, Monica Picco, Joseph S. Picco, Jr., and their children, Nicole Picco and Dominic Picco, appeal[2] from the judgment of the trial court rendered in favor of the named defendant, the town of Voluntown (town), and the defendant town board of education

---

[1] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance . . . ."

[2] The plaintiffs appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

(board).[3] On appeal, the plaintiffs claim, inter alia, that the trial court improperly determined that our decision in *Keeney* v. *Old Saybrook*, 237 Conn. 135, 166, 676 A.2d 795 (1996), in which we held that a municipality may be held liable pursuant to certain environmental protection statutes[4] "for a public nuisance that it intentionally creates through its prolonged and deliberate failure to act to abate that nuisance," does not apply to the plaintiffs' nuisance claims, which were asserted pursuant to § 52-557n. The plaintiffs claim that, if the holding of *Keeney* is applied in the present case, their revised complaint properly alleges viable nuisance claims against the defendants and, therefore, that the trial court improperly granted the defendants' motions to strike those claims and rendered judgment for the defendants. The defendants respond that the plain meaning of § 52-557n (a) (1) (C) requires the plaintiffs to allege that the defendants, by some "positive act," created the claimed nuisance in order for governmental immunity to be waived,

---

[3] The plaintiffs' revised complaint of March 16, 2007, contained seventy counts, all sounding in negligence and nuisance. In addition to the claims asserted against the town and the board, the plaintiffs asserted claims against the following individuals, each of whom served as either a town official or a town employee: (1) Gilbert Grimm, the town's first selectman; (2) Ronald Millovitsch, the head of the town's department of public works; (3) Paul Ricard, the head of grounds and maintenance for Voluntown Elementary School; (4) Mary T. Chinigo, the principal and or acting superintendent of Voluntown Elementary School; and (5) Diana M. Ingraham, the chairperson of the board. The trial court, with the consent of the plaintiffs, struck all of the counts directed at these individual defendants, as well as all counts sounding in negligence that were directed against the town and the board. The trial court also struck all of the counts directed against the town and the board that sounded in nuisance, albeit over the plaintiffs' objection. Thus, the counts that are the subject of this appeal are those directed against the town and the board that sounded in nuisance. Consequently, the individual defendants are not parties to this appeal. In the interest of simplicity, we hereinafter refer to the town and the board collectively as the defendants throughout this opinion.

[4] Our decision in *Keeney* related to General Statutes (Rev. to 1995) § 22a-14 et seq. and General Statutes § 22a-427. See *Keeney* v. *Old Saybrook*, supra, 237 Conn. 137, 159–60.

and that the holding in *Keeney* does not apply to claims brought solely pursuant to § 52-557n. Accordingly, the defendants contend that, because the plaintiffs' revised complaint fails to satisfy the positive act requirement of § 52-557n (a) (1) (C), the trial court properly rendered judgment for the defendants. We agree with the defendants and, therefore, affirm the judgment of the trial court.

The record reveals the following relevant factual allegations and procedural history.[5] The defendants owned, maintained and controlled an athletic field, known as Constitution Field (field), adjacent to Voluntown Elementary School (school). A white ash tree measuring approximately fifty-one inches in diameter and sixty feet in height stood on the field, approximately forty to fifty feet away from the playing area of a soccer field.[6] The tree allegedly had a "history of failure" and contained "numerous structural defects, including bark inclusions, trunk cracks, [and] major decay . . . ." On or about October 11, 2005, at approximately 5:30 p.m., Nicole Picco, a student at the school, was participating in a school sponsored soccer game on the field. At that time, Monica Picco, Joseph S. Picco, Jr., and Dominic Picco were standing near the ash tree and waiting for the game to end, when a portion of the tree separated from the main trunk and fell on top of Monica Picco, causing her to suffer serious injuries. The plaintiffs subsequently filed an action against the defendants, asserting claims sounding in negligence and nuisance.[7]

---

[5] Our statement of the factual allegations is taken from the revised complaint. Because the plaintiffs' appeal "follows from a motion to strike, the facts alleged in the . . . complaint must be taken to be true, and construed in the manner most favorable to the pleader." *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 42, 738 A.2d 623 (1999).

[6] The soccer field apparently comprised a portion of the entire athletic field.

[7] See footnote 3 of this opinion.

In their complaint, the plaintiffs alleged that the tree had a "natural tendency" to pose a danger in light of its size, defects and location on the field. The plaintiffs further alleged that the defendants knew or should have known of the tree's history of failure and dangerous propensities because the defendants previously had removed from the field and adjacent school grounds large branches that had fallen from the tree, had obtained an estimate for the tree's removal, and had been advised by a tree professional that the tree was dangerous and needed to be removed immediately. Finally, the plaintiffs alleged that the defendants' "failure to remove the tree was unreasonable" under the circumstances and that "[t]he condition of the tree was the proximate cause" of Monica Picco's injuries.

The defendants subsequently filed motions to strike the counts directed against them, asserting that the plaintiffs' claims were barred by the doctrine of governmental immunity. At oral argument before the trial court, the plaintiffs conceded that the defendants' motions to strike should be granted on all counts except those alleging nuisance. Thereafter, in a memorandum of decision, the trial court concluded, with respect to the plaintiffs' nuisance claims, that, on the basis of our common law, "[l]iability can be imposed on [a] municipality only in the event that, if the condition constitute[s] a nuisance, it was created by some positive act of the municipality." (Internal quotation marks omitted.) *Keeney* v. *Old Saybrook*, supra, 237 Conn. 164. "Indeed . . . failure to remedy a condition not of the municipality's own making is not the equivalent of the required positive act in imposing liability in nuisance [on] a municipality." (Internal quotation marks omitted.) Id. On the basis of these principles of law, the trial court concluded that the plaintiffs' nuisance claims could not withstand the defendants' motions to strike because "the plaintiffs have not alleged any facts indi-

cating that the defendants, by any positive act, created the alleged nuisance." In addition, the trial court held that this court's decision in *Keeney* did not require a different conclusion because the legal principles announced in *Keeney* were limited to "the narrow environmental context of that case . . . ." Accordingly, the trial court granted the defendants' motions to strike and rendered judgment thereon for the defendants. This appeal followed.

On appeal, the plaintiffs claim that the trial court improperly determined that the holding in *Keeney* was limited to the environmental law context and failed to apply that holding to their nuisance claims. The defendants respond that the plain language of § 52-557n (a) (1) (C) clearly and unambiguously precludes liability in nuisance against a municipal defendant unless the alleged nuisance was created by a positive act of the defendant. The defendants further argue that *Keeney* is inapplicable because the plaintiffs' claims in the present case were brought solely pursuant to § 52-557n (a) (1) (C). We agree with the defendants.

"This court has stated often that a plaintiff must prove four elements to succeed in a nuisance cause of action: (1) the condition complained of had a natural tendency to create danger and inflict injury [on] person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Internal quotation marks omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 355, 788 A.2d 496 (2002). In addition, when the alleged tortfeasor is a municipality, our common law requires that the plaintiff also prove that the defendants, by some positive act, created the condition constituting the nuisance. See, e.g., *Wright* v. *Brown*, 167 Conn. 464, 470, 356 A.2d 176 (1975). In the present case, the defendants have not challenged the plaintiffs'

allegations with respect to the four prima facie elements of nuisance. Rather, the defendants' motions to strike are premised on their claim that § 52-557n (a) (1) (C), like the common law, contains a positive act requirement that the plaintiffs have failed to allege and satisfy.

The issue of whether the defendants may be held liable pursuant to § 52-557n (a) (1) (C) for damages caused by their failure to act to abate an alleged public nuisance presents a question of statutory interpretation over which we exercise plenary review. See, e.g., *Considine* v. *Waterbury*, 279 Conn. 830, 836, 905 A.2d 70 (2006). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z[8] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 836–37.

---

[8] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

In accordance with § 1-2z, we begin with the text of § 52-557n (a) (1), which provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . (C) *acts* of the political subdivision which constitute the *creation* or *participation in the creation* of a nuisance . . . ." (Emphasis added.) The statute does not define the word "acts" or the word "creation." "In the absence of a statutory definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." (Internal quotation marks omitted.) *Chatterjee* v. *Commissioner of Revenue Services*, 277 Conn. 681, 690, 894 A.2d 919 (2006); see also General Statutes § 1-1 (a).[9]

Common usage does not equate a failure to act with an act. Webster's Third New International Dictionary defines an "act" as "a thing done or being done" or "an external manifestation of the will: *something done* by a person pursuant to his volition . . . ." (Emphasis added.) Notably, the definition of the word "act" does not denote something *not* done by a person. The latter appropriately falls within the meaning of the word "omission," which is defined as "something left out, *not done,* or neglected . . . ." (Emphasis added.) Random House Unabridged Dictionary (2d Ed. 1993). This distinction is particularly significant in the present case because the statutory provision at issue references only "acts," whereas, in other parts of the same statute, the legislature uses the phrase "acts or omissions." See General Statutes § 52-557n (a) (1) (A) (stating that

---

[9] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

municipalities may be liable for "negligent acts or omissions"); General Statutes § 52-557n (a) (2) (A) (shielding municipalities from liability for "[a]cts or omissions of any employee . . . which constitute criminal conduct, fraud, actual malice or wilful misconduct"); General Statutes § 52-557n (a) (2) (B) (shielding municipalities from liability for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law"). We conclude that the legislature's use of different phrases within the same statute evidences a deliberate decision on its part to exclude omissions, or a failure to act, from the realm of municipal liability for nuisance. See *Catz* v. *Rubinstein*, 201 Conn. 39, 46–47, 513 A.2d 98 (1986) (when legislature uses word or phrase in one part of statute, its failure to use that word or phrase in another part of statute is deliberate); see also *Saunders* v. *Firtel*, 293 Conn. 515, 527, 978 A.2d 487 (2009) ("when a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]).

Our conclusion is further supported by the fact that the "acts" referred to in § 52-557n (a) (1) (C) must be ones that "constitute the *creation* or *participation in the creation of a nuisance* . . . ." (Emphasis added.) The word "create" is defined in Webster's Third New International Dictionary as: "to bring into existence" or "to cause to be . . . ." Thus, at a bare minimum, § 52-557n (a) (1) (C) requires a *causal link* between the "acts" and the alleged nuisance. A failure to act to abate a nuisance does not fall within the meaning of the term "acts," as used in § 52-557n (a) (1) (C), because inaction does not create or cause a nuisance; it merely fails to remediate one that had been created by some other force. Accordingly, the plain meaning of § 52-557n

(a) (1) (C)[10] leads us to conclude that that provision imposes liability in nuisance on a municipality only when the municipality positively acts (*does something*) to create (*cause*) the alleged nuisance.

Notwithstanding the clear meaning of the term "acts" contained in § 52-557n (a) (1) (C), the plaintiffs claim that the term "act" is ambiguous on the basis of the following alternative definition from the Cambridge Advanced Learner's Dictionary (3d Ed. 2008): "To do something for a particular purpose, or *to behave in the stated way*." (Emphasis added.) The plaintiffs contend that the latter portion of their definition, which includes behavior, encompasses the defendants' "conscious decision to ignore a warning to abate a dangerous condition" and, therefore, that their allegations satisfy the requirements of the statute. We are not persuaded.

We often have stated that, when "the ordinary meaning [of a word or phrase] leaves no room for ambiguity . . . the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 391, 985 A.2d 319 (2009). In the present case, the plaintiffs' proposed definition of the word "act" is untenable for several reasons and, therefore, does not render the meaning of the statute at issue ambiguous or alter our conclusion.

First, the plaintiffs completely ignore the first part of the definition of the word "act" that they have advanced.

---

[10] Although we previously have stated that the meaning of other subsections of § 52-557n (a) is "far from plain"; (internal quotation marks omitted) *Grady* v. *Somers*, 294 Conn. 324, 334, 984 A.2d 684 (2009); accord *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 188, 592 A.2d 912 (1991); those subsections are not implicated in this appeal. Therefore, our previous cases interpreting those other subsections do not prevent us from concluding that the specific provision at issue in this appeal, namely, § 52-557n (a) (1) (C), is plain and unambiguous.

That definition, "to do something," mirrors the definition of "act" set forth in Webster's Third New International Dictionary, and supports our interpretation of § 52-557n (a) (1) (C) as requiring a positive act and excluding a failure to act from the ambit of municipal liability for nuisance. Second, the plaintiffs' proposed definition lacks the required causal link between the acts and the alleged nuisance. Specifically, the plaintiffs have failed to demonstrate how the mere behavior of ignoring a warning to abate a nuisance actually *causes* the nuisance in the first place. Unlike with the proverbial chicken and egg conundrum, logic dictates that, in the context of public nuisances, the nuisance must precede the "behavior" of ignoring the nuisance, because one cannot ignore something that does not exist. Thus, the nuisance necessarily must be *caused* by something other than the behavior of ignoring it. Indeed, in the present case, the plaintiffs acknowledge in their revised complaint that the tree's defects and dangerous condition were caused by "*natural* tendenc[ies]" rather than by the defendants' behavior. (Emphasis added.)

Finally, in advocating for their proposed definition of the term "act," the plaintiffs have failed to account for the greater context in which the word "acts" is used in the statute. As we previously discussed, in other parts of § 52-557n (a), the legislature uses the phrase "acts or omissions," whereas, in § 52-557n (a) (1) (C), the legislature explicitly limits a municipality's liability to acts. The plaintiffs have ignored this context in advancing their definition, yet, this context clearly evidences that the legislature did not intend for liability to be imposed under § 52-557n (a) (1) (C) for the mere behavior of ignoring something; rather, as with the common law, the legislature intended for liability to be imposed only when a municipality has engaged in some positive act that results in the creation of the nuisance.

Applying our interpretation of § 52-557n (a) (1) (C) to the allegations in the plaintiffs' revised complaint, we conclude that the plaintiffs' claims cannot survive the defendants' motions to strike. The plaintiffs simply have not alleged any facts indicating that the defendants, by any positive act, created the alleged nuisance. Although the plaintiffs argue that the defendants' act of ordering an evaluation of the tree constitutes a positive act within the meaning of the statute, such argument necessarily fails because the evaluation of the tree did not *create* the nuisance; it merely evaluated it. Moreover, the plaintiffs explicitly alleged that the tree's defects and dangerous condition were caused by "*natural* tendenc[ies]"; (emphasis added); and that Monica Picco's injuries were proximately caused by the condition of the tree, as opposed to any acts of the defendants. Notably missing from the allegations is any claim that the defendants *did something* to *cause* the tree to decay, to rot or a portion thereof to fall down. Instead, the plaintiffs merely have alleged that the defendants knew or should have known of the tree's dangerous propensities and that their "failure to remove the tree was unreasonable . . . ." Such allegations are insufficient to state a viable cause of action in nuisance under § 52-557n (a) (1) (C). Accordingly, we conclude that the trial court properly granted the defendants' motions to strike the plaintiffs' claims and rendered judgment for the defendants.

Because the plaintiffs' claims were asserted solely pursuant to § 52-557n (a) (1) (C), and because we conclude that that statute contains a positive act requirement, we further conclude that our decision in *Keeney*, which did not concern § 52-557n, has no applicability to the present case.

The judgment is affirmed.

In this opinion the other justices concurred.