******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN PERRY ET AL. *v.* TOWN OF PUTNAM
(AC 37308)

Lavine, Beach and Norcott, Js.

*Argued October 22, 2015—officially released February 2, 2016*

(Appeal from Superior Court, judicial district of Windham at Putnam, Boland, J. [motion to strike]; Calmar, J. [judgment].)

*Michael D. O'Connell*, with whom, on the brief, was *Erin Arcesi Mutty*, for the appellants (plaintiffs).

*Melinda A. Powell*, with whom was *William H. St. Onge*, for the appellee (defendant).

*Opinion*

NORCOTT, J. This appeal from the judgment of the trial court rendered on the granting of a motion to strike raises the issue of whether the plaintiffs' complaint alleged facts sufficient to support a cause of action for nuisance. We conclude that it did not, and, accordingly, we affirm the judgment of the trial court.

The plaintiffs, John Perry and Patricia Perry, claim on appeal that the act of the defendant, the town of Putnam, of locating a parking lot on a portion of the its property immediately adjacent to the plaintiffs' property satisfied the affirmative act requirement of General Statutes § 52-557n (a) (1) (C).[1] The plaintiffs argue that their allegations of the relative positions of their property and the parking lot also satisfied the "natural tendency to create danger and inflict injury" and "unreasonable or unlawful" use elements of a nuisance cause of action. See *Picco* v. *Voluntown*, 295 Conn. 141, 146, 989 A.2d 593 (2010). The plaintiffs also argue that the "offensive and nefarious activities" that occurred on the parking lot proximately caused their injuries and resulted in excessive interference with their full use and enjoyment of their property. The defendant counters that the behavior to which the plaintiffs referred in their complaint was not properly attributable to the defendant, and further argues that the plaintiffs did not allege facts adequate to support the remaining elements of a cause of action for nuisance. We agree with the defendant.

The following facts and procedural history are relevant to our resolution of this appeal. In their amended operative complaint, the plaintiffs alleged that they live in Putnam and that the defendant owns a piece of property that borders theirs to the east and north. The plaintiffs live on their property. The plaintiffs also alleged that "the [defendant] created a nuisance by installing a parking area and directing people to park in the portion of the [defendant's] property that is immediately adjacent to the [plaintiffs'] primary residence on the [plaintiffs'] property." The plaintiffs elaborated that "the [defendant] chose to direct people to park in the specific area of the [defendant's] property that is immediately adjacent to the [plaintiffs'] primary residence on the [plaintiffs'] property, as opposed to a different portion of the [defendant's] property that does not impose upon the [plaintiffs'] primary residence, by erecting parking signage, gravelling the area and putting down physical parking markers in said area." The plaintiffs then recited a litany of annoyances emanating from the parking lot, ranging from vehicle noise, littering of automotive parts, assorted criminal activity, loud music, and "headlights shining directly into" the plaintiffs' home. The plaintiffs concluded that the defendant's acts denied them full use and enjoyment of their property, and requested an injunction in their demand

for relief.

The court granted the defendant's motion to strike the plaintiffs' original complaint in a memorandum of decision dated February 28, 2014. Thereafter, the plaintiffs filed an amended complaint dated March 13, 2014, the allegations of which are the subject of this appeal. The court granted the defendant's motion to strike the amended complaint in a memorandum of decision dated June 20, 2014. In this memorandum of decision, the court concluded that the amended complaint did not state a claim for nuisance because it failed to allege facts sufficient to support several of the elements of that claim. The court reasoned that "the plaintiffs here invoke *Picco* [v. *Voluntown*, supra, 295 Conn. 141] as though it holds that a person has successfully pled a nuisance claim against a municipality under [§ 52-557n (a) (1) (C)] if he alleges that the town has engaged in a positive act. Rather, the case holds that the allegation of a positive act is a necessary additional factor to a complaint alleging a nuisance, coming on top of the four which are traditionally recognized as the elements of that tort. . . . If the defendant is a municipality, then by statute the 'four' becomes 'five.' The amended complaint, and plaintiffs' argument in favor of its sufficiency, merely assume that the parking lot is a nuisance. (This assumption depends primarily upon its location adjacent to their property; by implication, it would not be a nuisance if the [defendant] had located it elsewhere). They completely overlook the requisite allegations which would go to show that a nuisance exists at all, particularly any factual basis upon which it can be concluded that the parking lot 'had a natural tendency to create danger and inflict injury,' that the [defendant's] use of its land to create a public parking lot adjacent to its athletic facility was 'unreasonable or unlawful,' or that the 'nuisance' was the proximate cause of any injuries they claim to have sustained." After the court granted the defendant's motion to strike the amended complaint, the plaintiffs filed a motion for judgment, which the court granted on October 22, 2014.

"A motion to strike attacks the sufficiency of the pleadings." *McCoy* v. *New Haven*, 92 Conn. App. 558, 561, 886 A.2d 489 (2005); see Practice Book § 10-39. "Because a motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court, our review of the court's ruling [on a motion to strike] is plenary." (Internal quotation marks omitted.) *Himmelstein* v. *Windsor*, 304 Conn. 298, 307, 39 A.3d 1065 (2012). "A motion to strike attacks the legal sufficiency of the allegations in a pleading. . . . In reviewing the sufficiency of the allegations in a complaint, courts are to assume the truth of the facts pleaded therein, and to determine whether those facts establish a valid cause of action. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied.

. . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder." (Citation omitted; internal quotation marks omitted.) Id.

"This court has stated often that a plaintiff must prove four elements to succeed in a nuisance cause of action: (1) the condition complained of had a natural tendency to create danger and inflict injury [on] person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages. . . . In addition, when the alleged tortfeasor is a municipality, our common law requires that the plaintiff also prove that the defendants, by some positive act, created the condition constituting the nuisance." (Citation omited; internal quotation marks omitted.) *Picco* v. *Voluntown*, supra, 295 Conn. 146. Our Supreme Court has held that § 52-557n (a) (1) (C), like the common-law cause of action for nuisance as against municipalities, also has an affirmative act requirement. "[T]he plain meaning of § 52-557n (a) (1) (C) leads us to conclude that that provision imposes liability in nuisance on a municipality only when the municipality positively acts (*does something*) to create (*cause*) the alleged nuisance." (Emphasis in original; footnote omitted.) Id.

In our plenary review of the legal sufficiency of the plaintiffs' factual allegations to support a cause of action for nuisance, we conclude, as did the trial court, that the complaint fails to allege facts sufficient to support several of the elements of that tort. First and foremost, a parking lot does not have a "natural tendency to create danger and inflict injury [on] person or property . . . ." See id. Our Supreme Court has repeatedly characterized this element as "essential" to the tort of nuisance. See, e.g., *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 369, 780 A.2d 98 (2001); *Kostyal* v. *Cass*, 163 Conn. 92, 99, 302 A.2d 121 (1972); *Wood* v. *Wilton*, 156 Conn. 304, 310, 240 A.2d 904 (1968). Connecticut cases have never deemed a parking lot to have a natural tendency to create danger and to inflict injury. Conditions deemed to have such a tendency include a diving board positioned over very shallow, murky water, without signage to indicate the danger; *Hoffman* v. *Bristol*, 113 Conn. 386, 387, 155 A. 499 (1931); a public town dump, in which unattended fires frequently burned, and which the town fire marshal had considered a hazard for some time, adjacent to marshland that abutted a row of buildings; *Marchitto* v. *West Haven*, 150 Conn. 432, 437–38, 190 A.2d 597 (1963); and landfills that leaked contaminants into the plaintiffs' water supplies; *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 36–37, 404 A.2d 889 (1978); *Dingwell* v. *Litchfield*, 4 Conn. App. 621, 625, 496 A.2d 213 (1985). The parking lot in this case lacks the dangerous qualities of the conditions complained of in the cited cases. Unpleasant as the

activities that the plaintiffs describe must be to endure, such activities do not imbue the parking lot with a natural tendency to create danger and to inflict injury.

Secondly, the defendant's use, as alleged, of the land as a parking lot was not "unreasonable or unlawful." *Picco* v. *Voluntown*, supra, 295 Conn. 146. Quoting § 826 of the 4 Restatement of Torts, our Supreme Court determined that "[a]n intentional invasion of another's interest in the use and enjoyment of land is unreasonable . . . unless the utility of the actor's conduct outweighs the gravity of the harm." *Cyr* v. *Brookfield*, 153 Conn. 261, 265–66, 216 A.2d 198 (1965). Building a public parking lot on town land in the vicinity of athletic facilities is not an unreasonable use of the land, nor is it unlawful.[2] Building a public parking lot is a quintessential municipal function, and, unlike the landfills in the cases cited previously, to be functional, a parking lot *must* be in proximity to the facilities it is intended to serve, and it is common knowledge that parking lots regularly abut residential areas. We decline to hold, using the law of nuisance, that the plaintiffs' allegations about the precise placement of a parking lot on the defendant's property could support a finding that that placement was unreasonable.

Finally, the plaintiffs' allegations cannot support a finding that the defendant affirmatively acted to create the nuisance that caused the plaintiffs' alleged injuries. "[T]he plain meaning of § 52-557n (a) (1) (C) leads us to conclude that that provision imposes liability in nuisance on a municipality only when the municipality positively acts (*does something*) to create (*cause*) the alleged nuisance." (Emphasis in original; footnote omitted.) *Picco* v. *Voluntown*, supra, 295 Conn. 149–50. Here, the plaintiffs argue that the defendant's decision to locate, construct, and encourage parking in the parking lot in the precise location on the property bordering their property constituted the affirmative act required to plead nuisance against a municipality under § 52-557n (a) (1) (C).

The alleged affirmative acts on the part of the defendant that the plaintiffs describe, however, are not the acts that "created or participated in the creation of the alleged nuisance. See General Statutes § 52-557n (a) (1) (C). Rather, the acts giving rise to the annoyances of which the plaintiffs complain are those of third parties. Tellingly, in their complaint, the plaintiffs allege a series of "activities [that] now regularly occur" in the parking lot, none of which is attributable to the defendant. Among the activities the plaintiffs describe are "[o]vernight parking of trucks . . . with motors running while vehicle operators sleep in the cabs," "[i]nappropriate sexual activity in parked motor vehicles," "[u]nderage drinking," "[i]llegal drug sales," "[o]vernight gatherings of vehicles and people playing loud music and engaging in boisterous behavior," and "[d]angerous driving

. . . ." These activities, not the defendant's construction or location of the parking lot, are the cause of the plaintiffs' woes. Such unpleasant and disruptive behavior by third parties is the proper bailiwick of police regulation and control, not of the law of nuisance. The affirmative act requirement of § 52-557n (a) (1) (C), as articulated in *Picco* v. *Voluntown*, supra, 295 Conn. 149–50, accordingly, is not met on these facts; the defendant's innocent act of siting and constructing a parking lot did not "[create] or [participate] in the creation of a nuisance . . . ." General Statutes § 52-557n (a) (1) (C).

Accordingly, the facts as pleaded in the plaintiffs' complaint do not suffice to state a claim sounding in nuisance under § 52-557n (a) (1) (C). We therefore conclude that the trial court properly granted the defendant's motion to strike and rendered judgment thereon.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-557n (a) (1) (C) provides in relevant part: "Except as otherwise provide by law, a political subdivision of the state shall be liable for damages to a person or property caused by . . . acts of the political subdivision which constitute the creation or participation in the creation of a nuisance . . . ."

[2] Nor does the existence of the defendant's zoning regulation, which the plaintiffs cite in both their complaint and their appellate brief, requiring parking lots within or adjacent to residential districts to "be effectively screened on all sides," require the opposite conclusion. The plaintiffs argue that the existence of this regulation suggests that the defendant was aware that parking lots can have negative impacts on residential areas. Although this proposition is almost certainly true to some extent, it does not imbue parking lots with the natural tendency to create danger and to inflict injury, nor does it suggest that locating a parking lot adjacent to a residential area is unreasonable or unlawful. Indeed, the zoning regulation appears to contemplate precisely that arrangement.